IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re John Varvatos Enterprises, Inc., *et al.*, | : | Chapter 11 |
| | : | Case No. 20-11043 (MFW) |
| Debtors. | : | (Jointly Administered) |
| | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| Tessa Knox, individually and as the Certified | : | |
| Representative of the Class of Judgment | : | |
| Creditors, | : | Adv. No. 20-50623 (MFW) |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | Civ. No. 20-937-CFC |
| Lion/Hendrix Cayman Limited, | : | |
| | : | |
| Appellee. | : | |

William Dunnegan, DUNNEGAN & SCILEPPI LLC, New York, New York;
Mark Billion, BILLION LAW, Dover, Delaware

 *Counsel for Appellant*

James L. Bromley, Jonathan M. Sedlak, SULLIVAN & CROMWELL LLP, New
York, New York; Pauline K. Morgan, Sean T. Greecher, YOUNG CONAWAY
STARGATT & TAYLOR, LLP, Wilmington, Delaware

 *Counsel for Appellee*

**<u>MEMORANDUM OPINION</u>**

September 10, 2021
Wilmington, Delaware

CONNOLLY, UNITED STATES DISTRICT JUDGE

## I.      INTRODUCTION

Appellant[1] has appealed the Bankruptcy Court's July 10, 2020 *Order Dismissing Complaint* (Adv. D.I. 16)[2] ("Order").  The Order dismissed with prejudice Appellant's complaint, filed on behalf of a class of judgment creditors, which sought to equitably subordinate, pursuant to 11 U.S.C. § 510(c), $76 million of senior secured debt advanced by appellee Lion/Hendrix Cayman Limited ("LHCL") to John Varvatos Enterprises, Inc. ("JVE").  (A74-75).[3]

I have has jurisdiction over this appeal from the Bankruptcy Court under 28 U.S.C. § 158.  I review *de novo* the dismissal of claims on legal grounds.  *See Langford v. City of Atlantic City,* 235 F.3d845, 847 (3d Cir. 2000) (holding appellate review of Fed. R. Civ. P. 12(b)(6) dismissal is plenary).  The standard of review for denial of leave to amend is "plenary if the denial is based on a legal

---

[1]Appellant is Tessa Knox, individually and as certified class representative of the plaintiffs in *Knox v. John Varvatos Enterprises., Inc.* No. 17-cv-772 (the "New York Action") in the United States District Court for the Southern District of New York (the "New York Court").

[2] The docket of the adversary proceeding, captioned *Tessa Knox v. Lion/Hendrix Cayman Limited,* Adv. No. 20-50623 (MFW) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."  The docket of the Chapter 11 cases, captioned *In re John Varvatos Enterprises Inc., et al*., No. 20-11043 (MFW) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

[3] The appendix to Appellant's opening brief (D.I. 14-1) is cited herein as "A__," and the appendix to LHCL's answering brief (D.I. 16) is cited herein as "LA__."

error, and otherwise is for abuse of discretion." *Adams v. Gould Inc.,* 739 F.2d 858, 869-70 (3d Cir. 1984). For the reasons set forth herein, I will affirm the Order.

## II.   BACKGROUND

### A.   The Parties and the New York Action

JVE sold men's clothing under the brand name "John Varvatos." JVE employed both men and women as sales professionals at its stores. (A6 at ¶ 5). JVE required men sales professionals to wear three pieces of JVE clothes, and gave each man $12,000 a year in free clothes. Men would select $3,000 of clothes each quarter, or $12,000 each year, from JVE's stores, and then own the clothes they selected. (A6 at ¶ 6). Women sales professionals at the stores did not receive $12,000 each year in free JVE clothes. Beginning in about 2013, JVE began offering women sales professionals the ability to purchase clothing from a Lion-affiliated store, AllSaints, at a 50 percent discount ("AllSaints Discount"). (A12 at ¶¶ 28-29).

Tessa Knox, a former sales professional of the JVE, filed the New York Action on February 1, 2017. As amended, her complaint alleged that JVE's clothing allowance policy violated the Federal Equal Pay Act ("Federal EPA"), the New York Equal Pay Act ("NY EPA"), the New York Human Rights Law ("NY HRL"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). It alleged that,

2

by giving men $12,000 a year in free clothes and women a mere discount, JVE paid men thousands of dollars more for substantially equal jobs.  (A7 at ¶ 7).

The New York Court certified a class of 69 present or former women sales professionals and certified Ms. Knox as class representative.  On February 24, 2020, the New York Court held a jury trial.  Phase I of the trial concluded on February 28, 2020, with a verdict that (i) JVE violated the Federal EPA, the NY EPA, Title VII, and the NY HRL; (ii) women sales professionals should be compensated $3,000 for each $3,000 of clothes that men sales professionals received; (iii) JVE willfully violated the Federal EPA and the NY EPA; and (iv) JVE should pay punitive damages under Title VII.  (A9 at ¶ 14).  Phase II of the trial, conducted on March 2, 2020, concluded with the jury's verdict that the class should receive enhanced liquidated damages under the NY EPA, and punitive damages under Title VII, of $2,500 for each $3,000 of clothes the men sales professionals received.  (A10 at ¶ 16).

On March 24, 2020, a final judgment in favor of the class and against JVE was entered in the amount of $3,516,051.23.  (A10 at ¶ 18).  An appeal of that judgment and a motion for judgment notwithstanding the verdict were both pending at the time of the instant appeal.  On April 2, 2020, the class filed a motion for costs and attorneys' fees in the additional amount of $1,744,589.71, which also remained pending at the time of this appeal.  (A10 at ¶ 19).

Appellee LHCL is majority owned and controlled by affiliates of Lion Capital Fund III Partnerships.  LHCL owns Lion/Hendrix Corp., a Delaware corporation, which in turn owns JVE and each of JVE's debtor-affiliates.  (Bankr. D.I. 4 at ¶¶ 7-8, 17).  LHCL was not a party to the New York Action, and no findings were made with respect to LHCL in the New York Action.

### B.   The Chapter 11 Cases and the Adversary Proceeding

On May 6, 2020 (the "Petition Date"), JVE and certain affiliates (together, "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  (A10 at ¶ 20).  Debtors and LHCL, as DIP lender and proposed "stalking horse" purchaser, executed an asset purchase agreement ("APA") for the proposed purchase by LHCL of substantially all of the Debtors' assets for: (i) $19,450,000 in cash; (ii) a $76 million credit bid of secured debt advanced by LHCL ( "LHCL Secured Debt"); and (iii) assumption of certain liabilities ("Sale").

On June 8, 2020, Appellant filed its complaint against LHCL seeking to equitably subordinate the LHCL Secured Debt under § 510(c) of the Bankruptcy Code on the basis that LHCL "encouraged" or "facilitated" the clothing allowance policy that was the subject of the New York Action against JVE.  On June 23, 2020, LHCL filed a motion to dismiss pursuant to Rule 12(b)(6).  (A2).

4

### C.    The Order

On July 10, 2020, the Bankruptcy Court heard oral argument on the Motion

to Dismiss and issued a bench ruling.  (*See* A21-52).  The Bankruptcy Court

determined that the Complaint's allegations that LHCL engaged in inequitable

conduct were "very thin[]" and failed to meet the well-established pleading

standard that "bare legal allegations are not enough."  (A68-69)  The Bankruptcy

Court further determined that the Complaint failed to support a claim for equitable

subordination because it did not allege any "connection between any inequitable

conduct and the ordering of creditors in the bankruptcy estate."  (A71).  The

Bankruptcy Court granted dismissal with prejudice because "amendment would be

futile."  (A71).  On July 10, 2020, the Order was entered.  (A74-75).

On July 24, 2020, the Bankruptcy Court entered an order approving the Sale

(the "Sale Order"), and on August 12, 2020, the Sale closed in accordance with the

terms of the APA and the Sale Order.  (Bankr. D.I. 403).

### D.    The Appeal

On July 10, 2020, Appellant filed a timely notice of appeal.  (A76).  On July

13, 2020, Appellant moved for an expedited hearing of the appeal based on its

argument that the imminent sale would impair Appellant's rights in the adversary

proceeding.  (D.I. 3).  On July 14, 2020, that motion was denied.  (D.I. 6).  The

appeal is fully briefed.  (D.I. 14, 15, 17).  I did not hear oral argument because the

facts and legal arguments are adequately presented in the briefs and record, and my

decisional process would not be aided by oral argument.

## III.   ANALYSIS

Appellant argues that the Bankruptcy Court erred in dismissing the

complaint for failure to state a claim for equitable subordination by: (i) requiring

Appellant to plead a specific amount of damages; (ii) requiring the Complaint to

allege that LHCL's alleged inequitable conduct was the "sole cause" of

Appellant's alleged damages; and (iii) creating "a new black letter rule" that

Appellant could not plead a claim for equitable subordination because LHCL's

secured claim exceeded the value of the estate.  Appellant further argues that the

Bankruptcy Court abused its discretion by denying leave to replead and dismissing

the Complaint with prejudice.

### A.   Failure to State a Claim for Equitable Subordination

As the Third Circuit has instructed:

> To determine the sufficiency of a complaint, a court must take three steps:
> First, the court must take note of the elements a plaintiff must plead to state
> a claim. Second, the court should identify allegations that, because they are
> no more than conclusions, are not entitled to the assumption of truth.
> Finally, where there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly give rise to
> an entitlement for relief.

*Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (internal

citations, footnotes, and quotation marks omitted).

6

The Bankruptcy Code provides that a "court may (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim … ; or (2) order that any lien securing such a subordinated claim be transferred to the estate." 11 U.S.C. § 510(c). The Supreme Court has recognized that "[i]n the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton*, 308 U.S. 295, 307-08 (1939); *Burden v. U.S.*, 917 F.2d 115, 117 (3d Cir. 1990) (quoting same). The Third Circuit has described equitable subordination as a "remedial rather than penal" doctrine designed "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233-34 (3d Cir. 2003) ("*Citicorp II*").

"'[T]hree conditions must be satisfied before the exercise of equitable subordination is appropriate:' (1) '[t]he claimant must have engaged in some type of inequitable conduct,' (2) '[t]he misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant,' and (3) '[e]quitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].'" *In re Winstar Commc'ns*, 554 F.3d 382, 411-12 (3d

Cir. 2009) (quoting *In re Mobile Steel Co.*, 563 F.2d 692, 699-700 (5ᵗʰ Cir. 1977));

*see also United States v. Noland*, 517 U.S. 535, 538-39 (1996).

The Bankruptcy Court dismissed the Complaint based on failure to plead

facts sufficient to support a reasonable inference that (i) LHCL engaged in

inequitable conduct, or (ii) there was a nexus between any alleged inequitable

conduct and the distribution of the bankruptcy estate.  Although an initial

presumption of validity attached to LHCL Secured Debt claim, as Appellant

correctly points out (D.I. 14 at 15), claims asserted by insiders or fiduciaries

demand closer scrutiny.  *Mobile Steel*, 563 F.2d at 701-02.  As the party seeking

equitable subordination, Appellant had the initial burden of proof.  *In re Mid-Am.*

*Waste Sys., Inc.*, 284 B.R. 53, 69 (Bankr. D. Del. 2003) (citing *Mobile Steel*, 563

F.2d at 701-02).  Thus, to justify dismissal at this stage, the Complaint must have

failed to assert facts that, if taken as true, would be sufficient to satisfy this initial

burden.  However, Appellant "ha[d] the burden of coming forward with material

evidence to overcome the prima facie validity accorded to proofs of claim."  *Mid-*

*Am. Waste*, 284 B.R. at 69 (*citing Mobile Steel*, 563 F.2d at 701).

## 1.   Failure to Plead Inequitable Conduct by LHCL

Appellant asserts that the Complaint alleged facts sufficient to support an

inference that "Lion" engaged in inequitable conduct by encouraging and

facilitating the clothing policy.  (D.I. 14 at 3).  The allegations contained in the

Complaint are directed against an undistinguished entity: "Lion," which the Complaint defines as "Lion/Hendrix Cayman Limited [LHCL] (together with its affiliates, except the joint administered debtors . . .)."  (A5).  In its opposition to the Motion to Dismiss, Appellant re-defined "Lion" as "Lion/Hendrix Cayman Limited" without explanation.  (LA32).  In its opening brief on appeal, Appellant continues to define "Lion" – inconsistently with the Complaint – as "Lion/Hendrix Cayman Limited."  (D.I. 14. at 1).

Appellant argues that "the first element, inequitable conduct on the part of Lion, played no role in the Bankruptcy Court's decision."  (*Id*. at 11-12).  I disagree.  The Bankruptcy Court observed that the allegations against LHCL itself are "very thin[]."  (A68).  Acknowledging that it must "accept … and rely" on "the facts as alleged," the Bankruptcy Court noted that the Complaint "simply alleges that Lion – undefined or defined as Lion/Hendrix Cayman Limited and all its affiliates – … that all of those entities or somebody in those entities knew of and facilitated the continuation of the discriminatory policy by allowing the debtor to offer a discount at Lion's stores, and … that that allowed the debtor to continue its discriminatory policies."  (*Id*.)  The court further noted that "there are no facts alleged to show that the debtor would not have continued the policy anyway …" (*Id*.)  And, because there was "really no allegation … that there was a benefit to Lion," the Bankruptcy Court found the Complaint's allegations insufficient to

support a reasonable inference of inequitable conduct: "*Twombly* … states that bare legal allegations are not enough; there have to be facts to show there is, in fact, a claim that can be substantiated."[4]  (A69).

I agree with the court's analysis.   First, it appears undisputed that the clothing policy was in place since 2009—i.e., three years before LHCL acquired JVE in April 2012.[5]  The Complaint further asserts, however, that an undistinguished Lion entity "encouraged" and "facilitated" the clothing policy.  In support of this assertion, Appellant first states that Ms. Byron "testified that the 'head of Lion' had discussed the Clothing Allowance [P]olicy with Mr. John Varvatos in 2013 and that they agreed they would simply offer women sales professionals a 50 percent discount off the full retail price of certain clothes at another store in Lion's. . . portfolio, AllSaints."  (A12 at ¶ 28).  But at trial, the following exchange (the entirety of the testimony at issue) occurred:

> Q. Ms. Byron, do you recall when the AllSaints discount policy was instituted?
> A. I believe it was talked about potentially or instituted in 2013.
> Q. And how did it come to be put in place?
> A. The ***head of L[i]on Capital*** and John Varvatos spoke about the possibility of wanting to provide our female associates with a benefit since we did not produce any clothing for female associates.
> Q. Thank you.

---

[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).
[5] *See* LA17 at 13-14; LA467, *Knox* Tr. at 416:5-6; LA471, *Knox* Tr. at 410:10-15.

(LA0458, *Knox* Tr. at 397:1-10 (emphasis added)).  This testimony is not sufficient to support a reasonable inference that LHCL approved, "encouraged," or "facilitated" the clothing policy "by providing the camouflage of the AllSaints Discount," as alleged, or that LHCH engaged in any other inequitable conduct. This is only testimony that the "head of L[i]on Capital" spoke with John Varvatos about the ***possibility*** of offering a discount at AllSaints for female sales associates.

Second, the Complaint relies on class counsel's speculation at closing argument in the New York Action that "someone" decided that providing a women's clothing allowance was not "financially feasible" for JVE.  (A8 at ¶ 13). Appellant stresses that this argument was made in the New York Action "without objection from the Debtors."  (D.I. 14 at 6).  The Complaint, however, contains no allegations that this "someone" held a position at any Lion entity, let alone a position at LHCL.  Appellant argues that these allegations support at least an inference that the "head of L[i]on Capital" was aware of the clothing policy.  But this is not sufficient to carry Appellant's initial burden because "equitable subordination must be based on the [defendant]'s ***own acts***."  *In re Champion Enters., Inc*., 2010 WL 3522132, at *10 (Bankr. D. Del. Sept. 1, 2010) (emphasis added); *see also In re HH Liquidation, LLC*, 590 B.R. 211, 300 (Bankr. D. Del. 2018) (denying a claim for equitable subordination because the complaint did "not even allege that the [defendant] engaged in any inequitable conduct; rather, it

11

claim[ed] that [an affiliate] engaged in inequitable conduct, and that conduct should be imputed to the [defendant]").

As the Bankruptcy Court noted, "bare legal allegations are not enough" to meet the pleading standard under *Twombly* – "there have to be facts that show there is, in fact, a claim that can be substantiated." (A69). Because the Complaint does not allege sufficient facts to support a reasonable inference that LHCL engaged in inequitable conduct, the Order may be affirmed on this basis alone.

## 2. Failure to Plead Nexus Between Inequitable Conduct and Ordering of Creditors

Appellant argues that "Lion was the primary beneficiary of the clothing policy, both because its subsidiary saved the expense of paying equal wages to the women sales professionals, and because its affiliate recaptured some of these women's wages through purchases occasioned by th[e] worthless [AllSaints Discount]." (D.I. 14 at 4). "As a result," Appellant argues, the Complaint alleges facts sufficient to support the second element of equitable subordination – that the alleged misconduct caused "injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant." (*See id.*) Appellant contends that "absent equitable subordination, Lion will profit from its own wrongdoing, by acquiring – for the same amount of fixed debt – more assets of the Debtor than Lion would have acquired if Debtor had provided the Class of Judgment Creditors with equal pay for equal work." (*Id.* at 3).

It is well-established that equitable subordination is "an extraordinary remedy which is applied sparingly," *In re HH Liquidation, LLC*, 590 B.R. 211, 298 (Bankr. D. Del. 2018) (citation and internal quotation marks omitted), precisely because it represents a "departure from the usual principles of equality of distribution and preference for secured creditors." *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 117 (E.D. Pa. 1993) (citation and internal quotation marks omitted), *aff'd*, 37 F.3d 1487 (3d Cir. 1994). In dismissing the Complaint, the Bankruptcy Court noted that while the Bankruptcy Code "allow[s] the Court to subordinate for purposes of distribution all or part of an allowed claim to all or part of an allowed claim of another under general standards of equitable subordination," that concept is "pretty amorphous." (A69) As the Bankruptcy Court correctly noted, the Third Circuit has stated that "the goal of equitable subordination is to undo or offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors, in terms of the bankruptcy results." (*Id.*) (quoting *Citicorp II*). The Bankruptcy Court determined – and Appellant does not dispute – that LHCL's alleged inequitable conduct must "relate to damage that was caused to the relative positions of creditors in a bankruptcy context." (*Id.*) *See Citicorp,* 323 F.3d at 233-34 ("The doctrine of equitable subordination is remedial, and the goal is to undo or to offset any inequality *in the claim position of a creditor* that will produce injustice or unfairness to other creditors *in terms of the bankruptcy*

13

*results*." (emphasis added) (citation and internal quotation marks omitted)); *Mid-Am. Waste*, 284 B.R. at 68 ("The essential purpose of equitable subordination is to undo ***any inequality in the claim position of a creditor*** that will produce injustice or unfairness to other creditors ***in terms of distribution of the estate***.") (emphasis added).

The Bankruptcy Court concluded that the Complaint alleged no basis to subordinate LHCL's entire $90 million senior secured to Appellant's unsecured claim. The Bankruptcy Court noted that "this is not the typical case, where the allegation is that a secured creditor's actions harmed all of the unsecured creditors, by, for example, improving its position from unsecured to secured, to the detriment of all creditors." (A70). Here, Appellant's alleged damages from the purportedly discriminatory clothing policy were unrelated to the distribution of the bankruptcy estate and, therefore, not the type of damages meant to be remedied by equitable subordination.

The Bankruptcy Court's observation that Appellant's claim is "not the typical case" is well supported by the case law. For example, courts have found equitable subordination of claims justified when defendants have "attempted to convert their equity interests into secured debt in anticipation of bankruptcy," converted unsecured debt to secured debt "in order to leap-frog over another creditor in anticipation of bankruptcy," or "with knowledge of the debtor's

undercapitalization, used the debtor to repay themselves first, and then extended additional credit on a secured basis to exchange [their] equity interest." *In re Optim Energy, LLC*, 527 B.R. 169, 177 (D. Del. 2015) (collecting cases) (internal quotation marks, citations, and alteration omitted).  In contrast, the Complaint is devoid of any allegations of harm related to Appellant's position as a creditor.

The Bankruptcy Court also determined that Appellant's failure to plead a nexus between LHCL's alleged inequitable conduct and harm to its position as a creditor in the bankruptcy results was fatal to its claim – even if Appellant had sufficiently pleaded that LHCL engaged in inequitable conduct.  (A69).  In so holding, the Bankruptcy Court cited to an analogous Ninth Circuit case, in which the debtor's fraudulent lending practices resulted in two separate class actions against the debtor's lender, Lehman Brothers ("Lehman").  In *In re First Alliance Mortg. Co.*, 471 F.3d 977, 983 (9th Cir. 2006), Lehman was found liable for aiding and abetting a fraud, but the Ninth Circuit nevertheless affirmed the district court's holding that Lehman's fraudulent conduct did not warrant equitable subordination because "Lehman's activities were not carried out in contemplation of the later-filed . . . bankruptcy, and . . . Lehman's conduct was not a contributing factor to bringing about the bankruptcy or determining the ordering of creditors to the bankruptcy estate."  *Id*. at 1007.  In short, "Lehman did nothing to improve its status as a creditor at the expense of any other creditor."  *Id*.

The Bankruptcy Court concluded that even if the Complaint had sufficiently alleged that LHCL engaged in inequitable conduct, such "inequitable conduct is not enough, [because] that conduct was not a contributing factor to bringing about the bankruptcy or to determining the ordering of creditor to the bankruptcy estate." (A69).  As the Bankruptcy Court noted, "Lion has a ninety-plus-million-dollar claim, and the alleged damages, again, are no more than 5 million.  And yet, the request is to equitably subordinate the entire ninety-million-dollar secured claim to the claim of these plaintiffs."  (A70).  "To suggest that the secured claim should be equitably subordinated completely, I don't think is supported by the law."  (*Id*.) Appellant does not explain why this determination is legally wrong and fails to explain how the alleged inequitable conduct related "to damage that was caused to the relative positions of creditors in a bankruptcy context."  (A69).

Appellant states: "[w]hile we are not entirely sure, we believe that the Bankruptcy Court concluded that the Class of Judgment Creditors could not assert a claim for equitable subordination . . . because the amount of Lion's debt exceeded the value of the Debtor's estate."  (D.I. 14 at 17).  I reject this interpretation, as the Bankruptcy Court was very clear in its ruling, stating at least

four times that the Complaint failed to allege a connection between Lion's alleged inequitable conduct and the ordering of creditors in the bankruptcy estate.[6]

In short, I find that the Bankruptcy Court correctly held, based on well-established law, that the Complaint failed to plead a connection between any alleged inequitable conduct and harm to Appellant or benefit to LHCL in terms of the positioning of creditors or distribution of the bankruptcy estate.

## B.   Appellant's Arguments Do Not Compel Reversal

### 1.   Dismissal Was Not Based on Failure to Plead Damages

Appellant argues the ruling incorrectly required Appellant "to plead in the complaint the[] precise amounts of either [Appellant's] damages or Lion's unfair advantage." (D.I. 14 at 12). I disagree with Appellant's reading of the court's ruling. This issue was not raised by either of the parties in briefing or oral argument, and such a ruling would make little sense, as the Complaint did plead a

---

[6] *See* A69 ("And so I think [equitable subordination] has to relate to damage that was caused to the relative positions of creditors in the bankruptcy context. And this is specifically stated in the Ninth Circuit in the *First Alliance* case. The inequitable conduct is not enough, if that conduct was not a contributing factor to bringing about the bankruptcy or to determining the ordering of creditors to the bankruptcy estate"); A70 ("[T]here is no link between the . . . alleged damage to the plaintiffs and the position of Lion in this case"); *id.* ("And this is not the typical case, where the allegation is that a secured creditor's actions harmed all of the unsecured creditors by, for example, improving its position from unsecured to secured, to the detriment of all creditors"); A71 ("I just don't see the connection that the Ninth Circuit points out, the connection between any inequitable conduct and the ordering of creditors in the bankruptcy estate.")

specific amount of damages.  (A13 at ¶ 36).  Appellant's reading appears to isolate two sentences out of the ruling.  (*See* D.I. 14 at 12).  Read in context, the ruling is based not on a failure to plead a specific amount of damages, but rather, a failure to plead facts sufficient to support an inference that LHCL "encouraged" or "facilitated" the clothing policy:

> I think, quite frankly, ***the complaint is very thin***[] on the facts alleged versus Lion/Hendrix Cayman Limited.  It ***simply alleges*** that Lion – undefined or defined as Lion/Hendrix Cayman limited and all its affiliates – … that all of those entities or somebody in those entities knew of and facilitated the ***continuation*** of the discriminatory policy by allowing debtor to offer a discount at Lion's stores, and also alleges that that allowed the debtor to continue its discriminatory policies.  But there are ***no facts alleged*** to show that the debtor would not have ***continued the policy anyway*** or what parts of their damages were caused by Lion's actions, rather than the actions of the debtor itself.

(A68) (emphasis added).  In other words, Appellant's "very thin[]" allegations do not support its theory that Lion Capital – let alone LHCL – "encouraged" or "facilitated" the clothing policy.

### 2.   Dismissal Was Not Based on a Failure to Plead that LHCL's Conduct Was Sole Cause of Appellant's Damages

Appellant argues that the Bankruptcy Court dismissed the Complaint due to Appellant's failure to plead that LHCL's alleged inequitable conduct was the "sole cause" of Appellant's damages.  (D.I. 14 at 14).  LHCL asserts that there is no basis for such an interpretation of the ruling, and that this issue was not raised by either of the parties in the proceeding  below.  (D.I. 15 at 17).  I do not see any

support for this interpretation of the Bankruptcy Court's ruling.  The Bankruptcy Court's observation that "there are no facts alleged to show that the debtor would not have continued the policy anyway" (A68) supported its ruling that the Complaint failed to plead facts sufficient to give rise to a reasonable inference that LHCL "encouraged" or "facilitated" the clothing policy, especially in light of the undisputed fact that the clothing policy existed prior to LHCL acquiring JVE.  This argument cannot prevail, in light of the ruling that the alleged damages are not the type of harm that equitable subordination is meant to address.  (A69-70).

### 3.  The Decision Did Not Create "A New Black Letter Rule"

Appellant argues that the decision issued by the Bankruptcy Court will "create a new black letter rule" that Appellant could not plead a claim for equitable subordination because LHCL's secured claim exceeded the value of the bankruptcy estate.  (D.I. 14 at 16-17 (arguing the dismissal created a new rule that the "insolvency of the debtor's estate . . . provide[d] a basis to deny equitable subordination.")  I again reject this interpretation of the ruling, which repeatedly states that dismissal of the Complaint is appropriate because it fails to plead a connection between LHCL's alleged inequitable conduct and a harm to Appellant in terms of its position as a creditor and the bankruptcy results.

### C.     Dismissal With Prejudice Was Not an Abuse of Discretion

The Bankruptcy Court denied Appellant's application for leave to amend on the ground that "amendment would be futile."  (A71)  Futility exists where the complaint, as amended, would fail to state a claim upon which relief could be granted and would be immediately subject to dismissal.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  The Bankruptcy Court's denial of the opportunity to seek amendment is reviewed for abuse of discretion. *Lorenz*, 1 F.3d at 1413.  A court abuses its discretion only when it makes a clear error of judgment, exceeds the bounds of permissible choice, or when its decision is arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment.  *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (abuse of discretion exists when the "Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.")

Appellant argues that an amended pleading would be futile "only if the rule of law is that unsecured judgment creditors cannot rely on equitable subordination under 11 U.S.C. § 510 if the secured debt exceeds the value of the estate."  (D.I. 14 at 21).  This, again, was not the basis of the Bankruptcy Court's careful ruling:

> I think, in reality, the claim that is being asserted by plaintiffs is, at most, a direct claim they might have against Lion itself, but that is a nondebtor versus a nondebtor.  And the facts alleged do not at all impact on whether or

not a secured claim in the amount of ninety plus million dollars should be subordinated to one individual creditor or a class of plaintiffs.

So I just do not see the basis for an equitable subordination claim in this case.  And while I would normally allow amendment of a complaint, I think any such amendment would be futile because of that.  I just don't see the connection that the Ninth Circuit points out, the connection between inequitable conduct and the ordering of creditors in the bankruptcy estate. So I will dismiss the complaint without leave to amend.

(A70-71).  Thus, the Bankruptcy Court exercised its discretion to dismiss the

Complaint with prejudice based on its inability to discern any "basis for an

equitable subordination claim in this case," which was a proper application of

prevailing Third Circuit law on equitable subordination to the facts alleged and the

theory presented by Appellant.  The Complaint contained insufficient allegations to

support a reasonable inference of inequitable conduct by LHCL, and it further

failed to support any connection between the alleged inequitable conduct and an

effect on creditors that would justify the extraordinary relief sought.  As LHCL

correctly points out, Appellant still has not identified any facts that could remedy

the Complaint's deficiency.  (*See* D.I. 15 at 19-20).  *In re Summit Metals, Inc.*, 477

B.R. 484, 503 (Bankr. D. Del. 2012) ("Leave to amend the Complaint is denied

since [plaintiff] has failed to provide specific information regarding how he could

amend the Complaint as to comply with the applicable pleading requirements.").

Based on the foregoing, it was not an abuse of discretion to conclude that

amendment "would not cure a deficiency in the original complaint or . . . the

complaint as amended would not withstand a renewed motion to dismiss" as a matter of law. *In re Vision Metals, Inc.*, 311 B.R. 692, 701 (Bankr. D. Del. 2004) (quoting *In re Ambulatory Med. & Surgical Health Care, Inc.*, 187 B.R. 888, 900 (Bankr. W.D. Pa. 1995)).

## IV.   CONCLUSION

The Bankruptcy Court's ruling is consistent with controlling Third Circuit law, and dismissal with prejudice was not an abuse of discretion.  The Court will issue a separate Order consistent with this Memorandum Opinion.